NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

v.

RONNIE JAMES TAFT, *Appellant.*

No. 1 CA-CR 18-0714
FILED 01-07-2020

Appeal from the Superior Court in Maricopa County
No.  CR2017-153412-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Diane M. Johnsen joined.

_____

**M O R S E**, Judge:

¶1          Ronnie James Taft ("Taft") appeals his conviction for theft of means of transportation, arguing the superior court erred in admitting four photographs and refusing to give a mere-presence instruction. Taft also argues that the prosecutor engaged in misconduct warranting reversal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          M.V. awoke on the morning of November 18, 2017 to find his black sedan missing. He immediately contacted law enforcement to report a theft. Within hours, officers arrived at his house to obtain a detailed description of the car and other information.

¶3          The next day, a police officer spotted a black sedan matching the description and got a clear view of Taft driving the car. A second officer later spotted the black sedan about a half mile away, now parked in the middle of the road. As the second officer approached, Taft was unloading a bicycle from the car and a woman was standing nearby. The second officer detained both of them. Within minutes, the first officer arrived and identified Taft as the man she saw driving the car.

¶4          After Taft was advised of his *Miranda*[1] rights, he denied driving the car and claimed that a Hispanic man whom the police had just let go was driving it. Later, Taft changed his story and acknowledged he was driving the car and claimed he had borrowed it from his son's friend, "Tiny." Taft admitted, however, that he did not think the car belonged to Tiny because Tiny drives a white pick-up truck.

¶5          In searching the car, officers found two purses and a sweater in the back seat, all belonging to the woman. Officers also noticed extensive damage to the vehicle. The car had front-end and headlight damage; was missing its front bumper, speakers, rims, and hubcaps; and had damage

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

under the steering column. Additionally, officers found a house key jammed in the car's ignition, bent at the end, and shaved down. An officer later testified that the key appeared to be a "jiggle" or "manipulation" key, often used to bypass pins in a car's ignition.

¶6 The State charged Taft with one count of theft of means of transportation and alleged aggravating circumstances. On the morning of the first day of trial, Taft moved in limine to exclude four photos. First, Taft objected to the admission of a picture of the black sedan taken before it was stolen ("sedan photo"). Taft also challenged the admissibility of three photos showing two beer cans found inside the purse on the backseat ("beer can photos"). He argued that all four photos were irrelevant, would inflame the passions of the jury, and would cause him prejudice by implying he had committed other bad acts. The superior court denied Taft's challenges to all four photos but told the State not to elicit testimony about the beer cans. The State presented the beer can photos and the sedan photo at trial.

¶7 Just prior to closing arguments, Taft requested the jury be given a mere-presence instruction. He argued that the jury instructions did not go "far enough" to ensure the jury understood that "just because [Taft was] driving the car [did not] mean . . . that he knew that the car was stolen." The superior court rejected Taft's request for a mere-presence instruction.

¶8 After a three-day trial, the jury convicted Taft but did not find aggravating circumstances. Later, the court found Taft had several prior felony convictions and sentenced him as a category-three repeat offender to a presumptive term of 11.25 years' imprisonment. Taft timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I. Admission of the Photographs.

¶9 To assess the admissibility of photographs, courts consider (1) the photographs' relevance; (2) the likelihood the photographs will incite the jurors' passions; and (3) the photographs' probative value compared to their prejudicial impact. *State v. Goudeau,* 239 Ariz. 421, 459, ¶ 153 (2016). We review the superior court's ruling on the admissibility of photo evidence for an abuse of discretion. *State v. Dann,* 220 Ariz. 351, 362, ¶ 44 (2009).

*A. Beer Can Photos.*

¶10　　　　On appeal, Taft argues the beer can photos were irrelevant because there was no dispute that he, not the female, was driving the car. To be sure, evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Ariz. R. Evid. 401. And photographs may be relevant to corroborate, illustrate or explain testimony, or to corroborate the State's theory of how the crime was committed. *State v. Anderson,* 210 Ariz. 327, 339-40, ¶ 39 (2005).

¶11　　　　Here, the photographs were relevant to corroborate the first officer's testimony that Taft, and not the woman, was driving the car. Indeed, that was the "only reason" the superior court allowed the photos in evidence. Further, whether Taft was driving the car and thus in "control" of it was an essential element of the offense. A.R.S. § 13-1814(5). Even where a defendant does not explicitly contest a fact, the State retains the burden to prove all elements of the charged offense. *See Goudeau,* 239 Ariz. at 459, ¶ 154 (holding a photograph was admissible to support an uncontested fact because the State's burden is not relieved by a defendant's decision not to contest an essential element).

¶12　　　　Taft also contends that even if the photos were relevant, they were unduly prejudicial because they implied Taft "committed [the] other bad act[]" of driving under the influence. But neither the content of the photos nor any associated testimony unduly prejudiced Taft by suggesting he committed bad acts. Indeed, the purpose of the photographs was to suggest that Taft was driving by disconnecting him from the back seat, where the purses and the beer cans were found - precisely the opposite of what Taft alleges. Further, the State complied with the superior court's instruction not to elicit any testimony about the beer cans.

¶13　　　　To be sure, the court received a juror question about whether Taft was intoxicated, but the testifying officer's response was that she did not observe any indications Taft was intoxicated. Aside from this question and response, Taft points to no other occasion where intoxication was discussed. Therefore, any inference that the jury might have considered the photograph for an improper purpose is based solely on speculation and does not warrant reversal. *See State v. Gallegos,* 178 Ariz. 1, 11 (1994) ("Mere speculation that the jury was confused is insufficient to establish actual jury confusion."); *cf. State v. Doerr,* 193 Ariz. 56, 61, ¶ 18 (1998) (holding when a defendant "merely speculates" that the jury considered an impermissible matter, the court will not "indulge such guesswork.").

*B. Sedan Photo.*

**¶14**        Taft next argues that the superior court erred in admitting the sedan photo.  Taft contends that because he never saw the vehicle in the condition shown in the photo, the photo was irrelevant to whether he knew the car was stolen.  However, as the State argued at trial, under A.R.S. § 13-2305(1), if the State could prove that the car was "recently stolen," then the jury was permitted to accept the inference that Taft "was aware of the risk that [the car] had been stolen."  A.R.S. § 13-2305(1).  To show the car was "recently stolen," the State had the victim testify about the condition of the car just before it was stolen, offered the sedan photo to corroborate that testimony, then offered photos of the car at the time of Taft's arrest to show the car had incurred considerable damage in the meantime.  Thus, the sedan photo was relevant to meet the State's burden to show Taft knew the car was stolen.[2]

**¶15**        Taft also argues that even if the sedan photo was relevant, "seeing the amount of damage" was unduly prejudicial and inflamed the passions of the jury.  Specifically, he contends that the comparison between the car before and after the theft created the implication that Taft caused the damage to the car.  Even so, the State was careful to explain on several occasions that the damage to the car was only relevant to show knowledge that the car was stolen.  Besides, Taft can point to no indication that the jury used the sedan photo for an improper inference.  *Doerr,* 193 Ariz. at 61, ¶ 18 (1998).

*C. Harmless Error.*

**¶16**        Even assuming the superior court erred in admitting any of the four photographs, Taft was not prejudiced.  The State presented overwhelming evidence to prove each of the elements of the charge.  First, the jury heard an officer testify that Taft admitted driving and, thus, being in control of the car. Taft's main defense was that he did not know or have reason to know the car was stolen because he believed the car belonged to his son's friend.  But Taft admitted to officers that he knew his son's friend drove a white pickup truck, not a black sedan.  Above all, the car had damage to the steering column and was operated by a bent and shaved

---

[2]        Taft argues the State waived any argument that the photo bolstered the victim's credibility by not raising it at trial.  Taft is mistaken.  The State argued the sedan photo was relevant to show there is "no reason that [their witnesses] would be lying or hiding" past damage to the car.

down house key, which resembled a "manipulation" key that bypassed the pins in the ignition.

**¶17**　　　In light of this evidence, any error in the admission of the four photographs was harmless beyond a reasonable doubt. *State v. Bible,* 175 Ariz. 549, 588 (1993) (an error is harmless "if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict.").

## II. Mere-Presence Instruction.

**¶18**　　　Taft next argues the superior court committed reversible error in denying his request to instruct the jury on mere-presence. This Court reviews the denial of a requested jury instruction for an abuse of discretion. *State v. Wall,* 212 Ariz. 1, 3, ¶ 12 (2006). Generally, the superior court should instruct on "any theory reasonably supported by the evidence." *State v. LeGrand,* 152 Ariz. 483, 487 (1987). But "where the law is adequately covered by the [jury] instruction as a whole, no reversible error has occurred." *Doerr,* 193 Ariz. at 65, ¶ 35.

**¶19**　　　Taft contends the superior court denied his mere-presence instruction solely "because the [S]tate was not alleging accomplice liability," and erred because a mere-presence instruction may be appropriate in cases not involving accomplice liability. Taft's argument misstates the record. The superior court noted that a mere-presence instruction "really comes up" in cases of accomplice liability, but then separately held that other jury instructions adequately covered any need for a mere-presence instruction. Specifically, the court noted that because the jury would be instructed that the State must prove that Taft (i) was in control of the car, and (ii) knew or should have known the vehicle was stolen, a separate mere-presence instruction was unnecessary. Therefore, the court correctly reasoned that the jury instructions provided an "appropriate framework for the jury to render an appropriate verdict." *See State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75 (2000) ("[W]hen the substance of a proposed instruction is adequately covered by other instructions, the superior court is not required to give it.").

## III. Prosecutorial Misconduct.

**¶20**　　　Finally, Taft argues the State committed prosecutorial misconduct during closing arguments. Because Taft did not object at trial, we review for fundamental error. *See State v. Escalante,* 245 Ariz. 135, 140, ¶ 12 (2018).

**¶21**　　　Prosecutorial misconduct is "intentional conduct which the prosecutor knows to be improper" and is not the result of mistake. *State v.*

*Martinez,* 221 Ariz. 383, 393, ¶ 36 (App. 2009) (quoting *Pool v. Superior Court,* 139 Ariz. 98, 108-09 (1984)). To prevail on a claim of prosecutorial misconduct, Taft must prove that (1) misconduct occurred and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict. *State v. Moody,* 208 Ariz. 424, 459, ¶ 145 (2004). Reversal is warranted when the misconduct "so permeated the trial that it probably affected the outcome and denied [the] defendant his due process right to a fair trial." *State v. Blackman,* 201 Ariz. 527, 541, ¶ 59 (App. 2002).

**¶22** Taft asserts the prosecutor "argued facts not in evidence" and "misstated the law" by discussing accomplice liability and telling "jurors that they could convict" based on Taft's presence "when the car was damaged." In support, Taft cites the following statement by the prosecutor during closing argument:

> So there is that option. The latter alternative is that that damage and those items were taken after he got in the car either with Tiny or anyone else. And so if Tiny or someone else then was removing major parts of the car, ripping out the speakers, taking off the rims, selling them or doing who knows what with those items, there is no way that he was not on notice that 'This car is stolen, I probably shouldn't be in it. Certainly should not be something that I'm driving to the other side of town.'

> In either scenario, it's clear that the Defendant and any reasonable person knew or should have known that that [sic] a car was stolen and should not have been driving it.

**¶23** First, the prosecutor's arguments were supported by facts, and their reasonable inferences, admitted during trial. The extent of the damage to the black sedan was shown through photos and testimony, and Taft's wife testified that both the car and Tiny were at their home before Taft asked to borrow the car.

**¶24** Second, Taft mischaracterizes the prosecutor's statements. Just prior to the statement quoted above, the prosecutor laid out a first alternative: "So if the damage occurred before [Taft] got in [the car], it was damaged like that when it was at his house . . . how could that not raise tons of red flags . . . ." In context, it is clear the prosecutor neither argued accomplice liability nor that Taft was guilty simply because he witnessed the damage. Instead, the prosecutor permissibly argued that regardless whether the damage preceded Taft's entry into the vehicle or was done by

Tiny after Taft borrowed the car, the damage gave Taft knowledge or reason to know the car was stolen. Such an argument is not misconduct. *Goudeau*, 239 Ariz. at 466, ¶ 196 ("'[D]uring closing arguments counsel may . . . urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions.'" (quoting *Bible*, 175 Ariz. at 602). Indeed, later the prosecutor clarified this point, explaining "[t]he [d]efendant is not charged with stealing the car. He is charged with driving it when he should have known that it was stolen." Accordingly, the prosecutor's argument was not improper, and we find no misconduct.

## CONCLUSION

¶25        For the foregoing reasons we affirm Taft's conviction.

